Matthew C. Sgnilek, Esq., SBN 235299
msgnilek@ohaganmeyer.com
Andrea Rosenkranz, Esq. SBN 301559
arosenkranz@ohaganmeyer.com
O'HAGAN MEYER LLP
4695 MacArthur Court, Suite 210
Newport Beach, CA 92660
Telephone: (949) 942-8500
Facsimile: (949) 942-8510

Attorney for Defendant,
BROSNAN RISK CONSULTANTS, LTD

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND MURILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BROSNAN RISK CONSULTANTS, LTD; and DOES 1 through 20, inclusive.<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br>**[CAFA JURISDICTION]**<br><br>Complaint Filed: March 12, 2021<br>Trial Date:        TBD |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant BROSNAN RISK CONSULTANTS, LTD ("Defendant") by and through its counsel, hereby remove the above-captioned action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District

of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of this Notice of Removal, Defendant states:

## COMPLAINT AND TIMELINESS OF REMOVAL

1.     On March 12, 2021, Plaintiff Raymond Murillo ("Plaintiff"), by and through his counsel, filed a Complaint in the Superior Court of the State of California for the County of San Bernardino, entitled *Raymond Murillo v. Brosnan Risk Consultants, LTD,* Case Number CIVSB2106646 ("State Court Action"). Plaintiff's Complaint asserts the following causes of action: (1) Failure to Pay Minimum Wages (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay Weekly; (8) Failure to Pay All Wages Due Upon Separation of Employment; and (9) Violation of Business & Professions Code §§ 17200, *et seq*. Declaration of Matthew C. Sgnilek ("Sgnilek Decl.") ¶ 2, Exh. 1.  Plaintiff purports to bring these claims on behalf of a putative class of "All California residents currently or formerly employed by Defendant as non-exempt employees in the State of California at any time between September 14, 2016 and the date of class certification" ("Proposed Class"). *Id*.

2.     Plaintiff served Defendant with the Complaint via certified mail on April 19, 2021. (Declaration of Michelle Harkavy ("Harkavy Decl."), ¶ 5.)

3.     On July 23, 2021, Defendant filed its Answer to Plaintiff's Complaint. Sgnilek Decl. ¶ 9, Exh. 8.

4.     Pursuant to 28 U.S.C. § 1446(a), Exhibits 1 through 8 to the Declaration of Matthew C. Sgnilek, filed herewith, constitute all process, pleadings, and orders that Defendant is aware of having been filed in the State Court Action.

5.     This case is removable under 28 U.S.C. § 1453(b) because it meets the requirements of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA").

## THIS CASE IS REMOVABLE UNDER 28 U.S.C. § 1453(b) BECAUSE IT QUALIFIES AS A "CLASS ACTION" THAT MEETS THE REQUIREMENTS OF 28 U.S.C. § 1132(d)(2)

6.     This case qualifies as a "class action" in which the putative class includes at least 100 members, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and one or more members of the putative class and Defendant are citizens of different states. See 28 U.S.C. §§ 1332(d). Consequently, this action is removable pursuant to 28 U.S.C. § 1453, which provides that a "class action" may be removed to federal court in accordance with 28 U.S.C. § 1446(b).

**A. The putative class includes at least 100 members.**

7.     Plaintiff purports to bring this action as an individual and on behalf of "All California residents currently or formerly employed by Defendant as non-exempt employees in the State of California at any time between September 14, 2016 and the date of class certification." [1] *See* Compl., ¶ 20.

**B. Defendant is not a governmental entity.**

8.     Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." Defendant is a private corporation, not a state, state official or other government entity exempt from the CAFA.

///

///

---

[1] Plaintiff seeks to recover damages for a longer period of time by way of his inclusion of a claim pursuant to Bus. & Prof. Code § 17200, *et seq.* and alleging that the statute of limitations for this matter was tolled between April 6, 2020, and October 1, 2020 pursuant to Cal. Rules of Court, Appendix I, Emergency Rule No. 9. As an initial matter, Defendant does not concede that the class period proposed by Plaintiff is the appropriate statute of limitations period or that Plaintiff is entitled to any damages, at all. Additionally, Defendant began its operations in California in March 2019 and therefore did not employ any non-exempt employees in California prior to March 2019.

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

**C. The amount in controversy exceeds $5,000,000.**

9.     This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

10.     The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.*, at 88-89. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*

11.     In determining the amount in controversy, courts may consider "evidence outside the complaint, including affidavits or declarations, or other summary judgment type evidence relevant to the amount in controversy" at the time of removal. *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotations omitted). A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of the violations." *Oda, et al. v. Gucci Am., Inc*., 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015).

12.     Defendant disputes that the proposed class could ever be certified or

that Defendant is liable for any of the claims Plaintiff asserts in the Complaint.[2] *See* Compl.  Nevertheless, Defendant submits that the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000. 28 U.S.C. § 1332(d)(6).

13.    For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

14.    In his Complaint, Plaintiff brings claims for: (1) Failure to Pay Minimum Wages (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay Weekly; (8) Failure to Pay All Wages Due Upon Separation of Employment;

---

[2] Defendant denies that liability or damages can be established either as to Plaintiff or on a class-wide basis. Defendant does not concede, and reserves the right to contest, at the appropriate time, Plaintiff's allegations that this action may properly proceed as a class action. Defendant does not concede and reserves the right to contest, at the appropriate time, that any of Plaintiffs' allegations constitute a cause of action against it under applicable California law. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. Defendant's notice seeks only to establish that the amount in controversy is more likely than not in excess of CAFA's jurisdictional minimum. "The amount in controversy is simply an estimate of the

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

and (9) Violation of Business & Professions Code §§ 17200, *et seq*. Sgnilek Decl. ¶ 2, Exh. 1.

15.     Plaintiff seeks the following relief on behalf of himself and the putative class:

a.     For certification under California Code of Civil Procedure § 382 of the proposed Class and any other appropriate subclass;

b.     For appointment of Raymond Murillo as class representative;

c.     For appointment of Aegis Law Firm, PC, as class counsel for all purposes;

d.     For compensatory damages in an amount according to proof at trial;

e.     For an award of damages in the amount of unpaid compensation including, but not limited to, unpaid wages, unreimbursed expenses, benefits, and penalties;

f.     For economic and/or special damages in an amount according to proof at trial;

g.     For liquidated damages pursuant to Labor Code § 1194.2;

h.     For statutory penalties to the extent permitted by law, including those pursuant to the Labor Code and TWC Wage Orders;

i.     For injunctive relief as provided by the California Labor Code and California Business and Professions Code §§ 17200, *et seq.*;

j.     For restitution as provided by Business and Professions Code §§ 17200, *et seq.*;

k.     For an order requiring Defendants to restore and disgorge all funds to each employee acquired by means of any act or practice declared by this

---

total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon*

Court to be unlawful, unfair, or fraudulent and, therefore, constituting unfair competition under Business and Professions Code§§ 17200, *et seq.*;

l.      For pre-judgment interest;

m.      For reasonable attorneys' fees, costs of suit, and interest to the extent permitted by law, including, but not limited to, Code of Civil Procedure § 1021.5 and Labor Code §§226(e) and 1194; and

n.      For such other relief as the Court deems just and proper.

16.      The amount in controversy requirement under CAFA can easily be met by making reasonable assumptions about the putative class and by focusing on the above-mentioned damages and penalties that Plaintiff seeks to pursue using Defendant class information only.

### 1.      <u>First Cause of Action for Unpaid Minimum Wages</u>

17.      Plaintiff alleges that during the relevant time period, Defendant failed to pay Plaintiff and Class Members all wages owed when Defendant did not pay for all hours worked, including but not limited to, hours spent working off-the-clock and through meal periods while clocked out, and time rounded in Defendant's favor, among others.  Compl., ¶ 41.  Plaintiff further alleges that Defendant failed to pay at least minimum wage to Plaintiff and Class Members for all hours worked. Compl., ¶ 42.

18.      Based on these allegations, Plaintiff seeks to recover the full amount of alleged unpaid minimum wages, interest and penalties thereon, liquidated damages, attorneys' fees and costs. Compl., ¶¶ 43-44.

19.      Plaintiff does not allege the number of regular hours he contends is unpaid other than that "[d]uring the relevant time period, Defendants failed to pay Plaintiff and Class Members all wages owed when Defendants did not pay for all

*Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

hours worked." Compl., ¶ 41. From March 17, 2019, through October 1, 2020, Defendant employed approximately 2,441 non-exempt employees who worked approximately 38,999 workweeks, with an average hourly rate of $16.32.

20.    Even taking a conservative approach and limiting Plaintiff's unpaid minimum wages claim to two (2) hours of unpaid wages per workweek, Plaintiff has placed intro controversy at least $1,272,927.36 ($16.32 per hour x 2 hours of unpaid wages per workweek x 38,999 workweeks).

21.    Plaintiff also seeks liquidated damages. Since according to Labor Code section 1194.2, liquidated damages are equal to the amount of unpaid wages, the amount in controversy for liquidated damages is approximately $1,272,927.36.

22.    In total, the amount in controversy for Plaintiff's alleged minimum wage claim is $2,545,854.72.

### 2.    Second Cause of Action for Unpaid Overtime Wages

23.    In his second cause of action, Plaintiff alleges that during the relevant times mentioned, Plaintiff and Class Members were required to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work. Compl., ¶ 52. However, Plaintiff alleges that Defendant failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked when Defendant failed to pay for time spent working off-the-clock and through meal periods, and time rounded in Defendant's favor, among other reasons. Plaintiff further alleges that when Defendant paid overtime wages, they were sometimes miscalculated because, among other reasons, Defendant did not include all non-discretionary pay in the calculation. Compl., ¶ 53.

24.    The Complaint alleges various theories of violations leading to unpaid overtime liability: an unlawful rounding practice, paying the overtime rate at the regular rate or otherwise inaccurate rate of pay, and failing to take into account all

forms of remuneration including non-discretionary bonuses into the regular rate of pay for purposes of calculating overtime rate of pay.  Compl., ¶ 53.

25.    Based on these allegations, Plaintiff seeks to recover alleged unpaid overtime wages, interests and penalties thereon, attorneys' fees and costs.  Compl., ¶ 56.

26.    Plaintiff does not allege the number of overtime hours he contends is unpaid other than that "[d]uring the relevant time period, Defendants failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked Compl., ¶ 53.  As discussed above, from March 17, 2019, through October 1, 2020, Defendant employed approximately 2,441 non-exempt employees who worked approximately 38,999 workweeks, with an average hourly rate of $16.32.  Even taking a conservative approach and limiting Plaintiff's overtime claim to only 2 hours of unpaid overtime per workweek at time and a half rather than double time, Plaintiff has placed into controversy at least $1,909,391.04 ($16.32 per hour x 1.5 overtime premium x 38,999 workweeks x 2 hours per workweek).

### 3.    Plaintiff's Third Cause of Action for Failure to Provide Meal Periods or Compensation In Lieu Thereof

27.    With respect to Plaintiff's third cause of action for failure to provide meal periods, the Complaint alleges that "During the relevant time period, Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, on-duty, and/or they were not permitted to take a second meal period." Compl., ¶ 62.  Plaintiff further alleges that at all relevant times, Defendants failed to pay Plaintiff and Class Members meal period premiums for missed, late, and/or short meal periods pursuant to Labor Code § 226.7(b) 10 and section 11 of the applicable IWC Wage Order.  Compl., ¶ 64.

28.     Although Plaintiff does not allege the number of shifts worked per workweek, the number of shifts in which meal periods were required, the number of missed meal periods, or any other specific allegations, based on reasonable assumptions drawn from the Complaint, Defendant reasonably assumes two (2) meal period violations per workweek.

29.     From March 17, 2019, through October 1, 2020, Defendant employed approximately 2,441 non-exempt employees who worked approximately 38,999 workweeks.  The average hourly rate of pay of class members is $16.32.

30.     Utilizing a conservative violation rate of two (2) meal period violations per week, and using the average hourly rate of $16.32, the amount in controversy related solely to Plaintiff's meal period claim would be $1,272,927.36 ($16.32 per hour x 2 meal period violations per workweek x 38,999 workweeks).

### 4.     Plaintiff's Fourth Cause of Action for Failure to Provide Rest Periods or Compensation In Lieu Thereof

31.     With respect to Plaintiff's fourth cause of action for failure to provide rest periods, the Complaint alleges that "[d]uring the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods, were required to remain on-duty during rest periods, and/or were not authorized to take their rest periods."  Compl., ¶ 69.  Plaintiff further alleges that "At all relevant times, Defendants failed to pay Plaintiff and Class Members rest period premiums for missed, late, and/or interrupted rest periods pursuant to Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order."  Compl., ¶ 71.

32.     Although Plaintiff does not allege the number of shifts worked per workweek, the number of shifts in which rest periods were required, the number of

missed rest periods, or any other specific allegations, based on reasonable assumptions drawn from the Complaint, Defendant reasonably assumes two (2) rest period violations per workweek.

33.    From March 17, 2019 through October 1, 2020, Defendant employed approximately 2,441 non-exempt employees who worked approximately 38,999 workweeks.  The average hourly rate of pay of class members is $16.32.

34.    Utilizing a violation rate of two (2) rest periods per week, and using the average hourly rate of $16.32, the amount in controversy related solely to Plaintiff's rest break claim would be $1,272,927.36 ($16.32 per hour x 2 rest period violations per workweek x 38,999 workweeks).

### 5.    Plaintiff's Sixth's Cause of Action for Failure to Provide Accurate Wage Statements

35.    For his Sixth Cause of Action, Plaintiff alleges that "[d]uring the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members. The deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members."  Compl., ¶ 83.  The Complaint further alleges that "[a]s a result of Defendants' knowing and intentional failure to comply with Labor Code § 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily-protected rights. Specifically, Plaintiff and Class Members are deemed to suffer an injury pursuant to Labor Code § 226(e) where, as here, Defendants intentionally violated Labor Code § 226(a). Plaintiff and Class Members were denied both their legal right to receive, and their protected interest in receiving, accurate itemized wage statements under Labor Code § 226(a). In addition, because

Defendants failed to provide the accurate rates of pay on wage statements, Defendants prevented Plaintiff and Class Members from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment. Plaintiff had to file this lawsuit in order to analyze the extent of the underpayment, thereby causing Plaintiff to incur expenses and lost time. Plaintiff would not have had to engage in these efforts and incur these costs had Defendants provided the accurate hours worked, wages earned, and rates of pay. This has also delayed Plaintiff's ability to demand and recover the underpayment of wages from Defendants." Compl., ¶ 84.

36.     The wage statement cause of action has a one-year limitations period (i.e., September 17, 2019[3] forward) and is not affected by the unfair business practices claim. Potential penalties are $50 per person for the initial pay period, and $100 per person for each later pay period, up to a maximum of $4000 per employee.

37.     While Defendant denies the validity and merit of Plaintiff's wage statement claims, for purposes of removal only, based on the allegations in the Complaint, there were approximately 814[4] non-exempt employees employed by Defendant since September 17, 2019.   These 814 employees have been issued approximately 6,500[5] pay stubs since September 17, 2019.   Based on the allegations in the complaint, Plaintiff alleges that Defendant failed to provide a compliant wage statement on each of the wage statements. As such, the amount at controversy just for this claim, based on the allegations in the Complaint, is $609,300.00 ([814 pay periods x $50 = $56,450] + [5,686 pay periods x $100 = $1,002,200]).

---

[3] This statute of limitations period is based on Plaintiff's proposed class in the Complaint. However, as stated earlier, Defendant does not concede that the class period proposed by Plaintiff is the appropriate statute of limitations period or that Plaintiff is entitled to any damages, at all.
[4] For illustrative purposes, this number was calculated by dividing the 2,441 non-exempt employees who worked for Defendant from March 17, 2019, through October 1, 2020, by 3 (2,441 ÷ 3 = 814).
[5] For illustrative purposes, this number was calculated by dividing the total pay periods from March 17, 2019, through October 1, 2020 by 3 (19,500 ÷ 3 = 6,500)

**6.    Plaintiff's Eighth Cause of Action for Waiting Time Penalties**

38.    For his Eighth Cause of Action, Plaintiff seeks waiting time penalties pursuant to Labor Code Section 203. Specifically, Plaintiff alleges that "[d]uring the relevant time period, Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper minimum wage and overtime compensation, meal period premiums, and rest period premiums either at the time of discharge or within seventy-two (72) hours of their leaving Defendant's employ." Compl., ¶ 94.   Plaintiff alleges that "Defendant's failure to pay the Waiting Time Subclass all their earned wages at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ is in violation of Labor Code§§ 201 and 202." Compl., ¶ 95.  Plaintiff further alleges that "…the Waiting Time Subclass is entitled to recover from Defendants the statutory penalty, which is defined as the Waiting Time Subclass members' regular daily wages at their regular hourly rate of pay for each day they were not paid, up to a maximum of thirty (30) days."  Compl., ¶ 97.  For his Eighth Cause of Action, Plaintiff seeks waiting time penalties pursuant to Labor Code section 203.

39.    Defendant denies the validity and merit of Plaintiff's waiting time penalties claim. However, for purposes of removal only, based on a preliminary review of relevant records, Defendant estimates that approximately 417 employees have separated employment from March 2019 through September 20, 2020. Accordingly, although Defendant denies Plaintiff's allegations, including any alleged damages, even assuming one (1) minute of unpaid wages and based on the reasonable assumption that the putative class would receive waiting time penalties based on an average eight (8) hours worked per workday for thirty (3) days, and using the average hourly rate of pay of $16.32, an estimate of the amount in controversy related solely to waiting time penalties is $1,633,305.60 (417

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

1    individuals x 30 days x 8 hours per day x $16.32 per hour).

2    ## 7.    __Attorney's Fees__

3    40.    Plaintiff also seeks attorneys' fees and costs in his Complaint. See,
4    Compl., Prayer for Relief. The Court must consider attorneys' fees in determining
5    whether the amount in controversy is met, since the California Labor Code allows
6    recovery of such fees. It is well-settled that claims for statutory attorneys' fees are to
7    be included in the amount in controversy. See, e.g., *Fritsch v. Swift Transportation*
8    *Company of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.,*
9    432 F.3d 976, 980 (9th Cir. 2005), cert. denied, 127 S. Ct. 157 (2006); *Galt G/S v.*
10   *JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an
11   underlying statute authorizes an award of attorneys' fees, either with mandatory or
12   discretionary language, such fees may be included in the amount in controversy.").
13   In California, it is not uncommon for an attorneys' fee award to be twenty-five to
14   thirty percent of the settlement. *See, e.g., McGuigan v. City of San Diego,* 183 Cal.
15   App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million);
16   *Pellegrino v. Robert Half Intl, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010)
17   (affirming $558,926.85 in attorneys' fees in exemption misclassification class action,
18   but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008)
19   (affirming award of $727,000 in attorneys' fees plus a multiplier that equate to total
20   fees of $1,199,550 in class action involving violations of a living wage ordinance,
21   among others).

22   41.    The attorneys' fees benchmark in the Ninth Circuit is 25%. *Paul,*
23   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note
24   with approval that one court has concluded that the 'bench mark' percentage for the
25   fee award should be 25 percent.") (citation omitted); *Lo v. Oxnard Euro. Motors,*
26   *LLC*, No. 11-CV-1009, 2012 US. Dist. LEXIS 73983, *8-9 (S.D. Cal. May 29,

2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

### D. Summary of Amount in Controversy

42.    Even when taking a significantly conservative approach and accounting only for a certain timeframe throughout the class period (from March 17, 2019 through October 1, 2020) and accounting only for certain claims while disregarding his fifth and seventh causes of action for Unreimbursed Business Expenses and Failure to Pay Weekly, the amount that Plaintiff has placed in controversy totals **$9,243,706.08 plus attorney's fees** [$609,300.00 for wage statement penalties + $1,633,305.60 for waiting time penalties + $2,545,854.72 for unpaid minimum wages and liquidated damages + $1,272,927.36 for meal break premium + $1,272,927.36 for rest break premium + $1,909,391.04 for unpaid overtime].  This subtotal far exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25% further increases the amount in controversy by $2,310,926.52 for a total amount in controversy of **$11,554,632.60**.

| Plaintiff's Alleged Claim | Amount in Controversy |
| --- | --- |
| Wage Statement Penalties | $609,300.00 |
| Waiting Time Penalties | $1,633,305.60 |
| Unpaid Minimum Wages | $2,545,854.72 |
| Meal Break Premium | $1,272,927.36 |
| Rest Break Premium | $1,272,927.36 |
| Unpaid Overtime | $1,909,391.04 |

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

| | |
|---|---|
| Attorney's Fees | $2,310,926.52 |
| Conservative Sum Amount in Controversy | **$11,554,632.60** |

43.    Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid overtime, minimum wages, unpaid meal and rest periods premiums, inaccurate wage statements, final wages not timely paid, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2). Notably, the analysis above does not consider penalties sought for alleged unreimbursed business expenses and failure to pay weekly. This analysis is also extremely conservative as it only includes class data information from March 17, 2019, through October 1, 2020 (as opposed to present).

44.    Moreover, the claims alleged will likely not be tried for at least a year into the future, during which time the amount in controversy will continue to increase.

45.    As the foregoing shows, the putative class's claims easily exceed the $5,000,000 amount in controversy threshold for the purpose of CAFA jurisdiction.

**E. Plaintiff and Defendant Are Citizens of Different States.**

46.    CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Transport Ass'n of America*, 300 F3d 1129, 11 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different

16

states.

47.    For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

48.    Plaintiff alleges in the Complaint that he is a resident of California. Compl., at ¶ 10. As such, Plaintiff is a citizen of California.

49.    For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The United States Supreme Court has confirmed that to determine a corporation's principal place of business, a court must apply the "nerve center" test. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). In relevant part, the Court explained, as follows:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* at 1041-42.

50.    The "nerve center" test of a corporation's principal place of business looks to the place in which the corporation's executives and administrative functions are located. *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959) (corporation's principal place of business was New York, where its management was located, rather than Connecticut where most of its manufacturing

1
2
3

was done); *see also Diaz-Rodriguez v. Pep Boys Corp.*, 410 F. 3d 56, 60 (1st Cir. 2005) (nerve center test governs where corporation has "complex" and "far flung" activities).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

51.     Defendant is a citizen of the State of New York, not California. At the time Plaintiff filed the State Court Action, Defendant was incorporated under the laws of the State of New York. Defendant is still incorporated under the laws of the state of New York. Harkavy Decl., ¶ 2. At the time Plaintiff filed the State Court Action, Defendant's principal place of business was located in New York because its executive, operational and administrative office and functions are located in New York. *See Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed). Defendant's principal place of business is still located in New York. Harkavy Decl., ¶¶ 2-4. All of Defendant's current corporate officers reside in the State of New York and are based out of its New York office, including its Chief Executive Officer, Secretary, and Chief Administrative Officer. Harkavy Decl., ¶ 3. Defendant is not incorporated under the laws of the State of California and does not have its principal place of business in California, either at the time Plaintiff filed the State Court Action, or currently.  In fact, Defendant only began its operations in California in March 2019. Harkavy Decl., ¶¶ 2-4.

22
23
24

52.     In accordance with 28 U.S.C. § 1332, there is complete diversity of citizenship because Plaintiff (California) and Defendant (New York) are citizens of different States. *See* 28 U.S.C. § 1332(a)(1), (c)(l).

25
26
27
28

53.     For purposes of removal, the citizenship of Doe defendants is disregarded and only named defendants are considered. 28 U.S.C. § 1441(a); *Accord, Newcombe v. Adol Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (citing

28 U.S.C. § 1441(a)).

54.     Does 1 through 20, inclusive, are wholly fictitious. The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. The citizenship of these Doe defendants is to be disregarded for the purposes of determining diversity jurisdiction, and thus cannot destroy the diversity of citizenship between the parties in this case. 28 U.S.C. § 1441(a). *Accord, Newcombe*, 157 F.3d at 690-91 (citing 28 U.S.C. § 1441(a). Furthermore, because the Doe defendants have not yet been served, they need not join or consent to Defendants' Notice of Removal. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (named defendants not yet served in the state court action need not join in the notice of removal), superseded by statute on other grounds in *Ethridge v. Harbor House Rest.,* 861 F.2d 1389 (9th Cir. 1988).

## REMOVAL IS TIMELY

55.     An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant within 30 days of defendant receiving the initial pleading. See 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Mitchetti Pipe Stringing, Inc*., 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Rule 6 of the Federal Rules of Civil Procedure provides, in pertinent part, that when computing a time period stated in number of days, as with the 30-day removal period, the court must "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C); *see Anderson v. State Farm Mut. Auto. Ins. Co*., 917 F.3d 1126, 1128 n.2 (9th Cir. 2019) ("Thirty days from February 13, 2015, was Sunday, March 15, 2015,

so the notice of removal would have been timely filed on Monday, March 16, 2015.").

56.    Here, Plaintiff served the Defendant with the Complaint on April 19, 2021.  However, the court stayed all the proceedings in their entirety on April 12, 2021.  As such, removal of this action is timely because the Notice has been filed within 30 days from the date that the court lifted the stay on June 23, 2021.

## VENUE

57.    Venue is proper in this district and division because the Superior Court of the State of California for the County of San Bernardino is located within the federal Central District of California, Eastern Division, and thus is the "district and division embracing the place where such action is pending." 28 U.S.C. § 84(c), 1391, 1441(a) and 1446.

## NOTICE TO PLAINTIFF

58.    As required by 28 U.S.C. § 1446(d), Defendant will provide prompt written notice of the filing of this Notice of Removal.

///

///

///

///

///

///

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

## NOTICE TO THE SAN BERNARDINO SUPERIOR COURT

59.     As required by 28 U.S.C. § 1446(d), Defendant will promptly file this Notice of Removal with the Clerk of the Superior Court of California for the County of San Bernardino.

WHEREFORE, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant removes this case from the Superior Court of the State of California, County of San Bernardino, to the United States Court for the Central District of California, Eastern Division.

Dated:     July 23, 2021                    **O'HAGAN MEYER**

                            By:     _____
                                    Matthew C. Sgnilek, Esq.
                                    Andrea Rosenkranz, Esq.

                                    Attorney for Defendant,
                                    BROSNAN RISK CONSULTANTS,
                                    LTD

NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453

# CERTIFICATE OF SERVICE

*Raymond Murillo, et al. v. Brosnan Risk Consultants, Ltd.*
*San Bernardino Superior Court Case No. CIVSB2106646*

  I am over the age of eighteen years and not a party to the within action.  I am employed by O'HAGAN MEYER, whose business address is 1601 Pacific Coast Highway, Suite 290, Hermosa Beach, CA 90254.

  On **July 23, 2021**, I served the within document(s) described as:

**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**

On the parties in said action as follows:

See Service List

  ☒ **[BY ELECTRONIC SERVICE]** – I caused such document(s) to be electronically transmitted to the email addresses of the parties listed on the Service List pursuant to agreement with counsel for the parties to receive service by e-mail.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

  Executed on **July 23, 2021,** at Hermosa Beach, California.


          _____
          Liana Bickford

# SERVICE LIST

*Raymond Murillo, et al. v. Brosnan Risk Consultants, Ltd.*
*San Bernardino Superior Court Case No. CIVSB2106646*

| Attorneys for Plaintiff Raymond Murillo, individually, and on behalf of all others similarly situated | SAMUEL A. WONG<br>KASHIF HAQUE<br>JESSICA L. CAMPBELL<br>**AEGIS LAW FIRM, PC**<br>9811 Irvine Center Drive, Suite 100<br>Irvine, California 92618<br>Email: swong@aegislawfirm.com<br>Email: khaque@aegislawfirm.com<br>Email: jcampbell@aegislawfirm.com |
|---|---|